**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARGARET GONZALES,

    Plaintiff,

 vs.

SITEL OPERATING CORPORATION, a Delaware Corporation,

    Defendant.

Case No.: 2:19-cv-00876-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 11), filed by Defendant Sitel Operating Corporation ("Defendant"). Plaintiff Margaret Gonzalez ("Plaintiff") filed a Response, (ECF No. 13), and Defendant filed a Reply, (ECF No. 15). For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Compel Arbitration.

**I. BACKGROUND**

Plaintiff was Defendant's employee between January 30, 2017, to September 1, 2018, working as a Customer Service Representative. (First. Am. Compl. ("FAC") ¶¶ 7, ECF No. 7). However, on February 9, 2018, Plaintiff was involved in an auto accident, which caused significant injuries to her shoulder, hands, and wrists. (*Id.* ¶ 8). These injuries, according to Plaintiff, rendered her unable to perform the essential functions of her work. (*Id.* ¶ 10). Consequently, she requested roughly three months off from work through the Family and Medical Leave Act, which Defendant approved. (*Id.*). Her injuries persisted, so Plaintiff requested additional time off through the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). (*Id.* ¶ 12). Defendant initially approved her request for continued leave, but eventually terminated her effective September 1, 2018. (*Id.* ¶ 15).

On May 23, 2019, Plaintiff commenced this case by filing her Complaint, which she amended on June 12, 2019, alleging that Defendant's conduct violated the ADA. (*Id.* ¶¶ 1, 16–29). Two months after Plaintiff filed her initial Complaint, Defendant moved to compel arbitration of all her claims. (Mot. Compel, ECF No. 11). The basis for compelling arbitration purportedly arises from an agreement that Plaintiff electronically executed with Defendant on February 7, 2017, as a condition of employment. (*Id.* 3:3–13). The relevant portion of the purported agreement states,

> Any controversy, claim, or dispute relating to my employment or the termination of my employment with the Company shall be resolved through the Company's Open Door communications Policy, and if that procedure fails, then by final binding arbitration pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association . . . . This section applies, as permitted by law, to any claims under any statute or common law, including but not limited to . . . the Americans with Disabilities Act . . . .

(Associate Agreement, Ex. A-1 to Mot. Compel, ECF No. 11-3); (Pl.'s Electronic Signature Page to Associate Agreement, Ex. A-2 to Mot. Compel, ECF No. 11-4). Plaintiff claims that she never executed the agreement and, therefore, is not bound by it.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same

footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### III. DISCUSSION

#### A. Arbitrability

The Court's role begins with the threshold issue of determining whether an arbitration agreement exists between Plaintiff and Defendant. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Because an agreement to arbitrate is a matter of contract, courts "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Nevada courts have explained that the "Uniform Arbitration Act of 2000 (UAA), adopted in Nevada as Nevada Revised Statute 38.206–.248, does not require any particular formality to create an enforceable arbitration agreement"; and an enforceable arbitration agreement can arise in circumstances where a party's signature is not required. *See Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 119 (Nev. 2015) ("While NRS 38.219(1) requires that the arbitration agreement be 'contained in a record,' it does not require that the written record of

the agreement to arbitrate be signed."); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 182 (2018). Even so, as the party seeking to compel arbitration pursuant to the FAA, Defendant bears the burden of proving that a valid agreement exists between it and Plaintiff. *Wilson v. Huuuge, Inc.*, No. 18-36017, 2019 WL 6974430, at *3 (9th Cir. Dec. 20, 2019); *Obstetrics & Gynecologists William G. Wixted, M.D., et al. v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985); *see also* Nev. Rev. Stat. 38.219(2) ("The court shall decide whether an agreement to arbitrate exists."). Moreover, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the Court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1059 (D. Nev. 2019) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

Here, Defendant moves to compel arbitration of this dispute on the basis that Plaintiff electronically signed and executed an arbitration agreement as a condition of her employment, which encompasses Plaintiff's claims arising under the ADA. Plaintiff, however, claims her electronic signature was a forgery. (Resp. 5:26–6:8, ECF No. 13). She adds that Defendant offers no evidence showing an electronic signature came from her computer or online employee account; and thus, Defendant has not adequately proven Plaintiff's consent to arbitrate her claims. (*Id.* 5:14–25).

Upon review of the submitted evidence, the Court finds that Defendant adequately establishes Plaintiff's execution of an arbitration agreement encompassing her ADA-based claims. The Court preliminarily notes that electronic signature and execution of an arbitration agreement is not a bar to enforcement. *See Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1059 (D. Nev. 2019). Accordingly, turning to Defendant's evidence, Defendant explains the online procedures that it used when hiring Plaintiff—procedures that Defendant uses with all new employees hired after 2012. Specifically, Defendant created an online "Efficient Hire

Profile" (the "Profile") for Plaintiff after it extended a conditional offer of employment. (Decl. Kimberly Bacci ¶¶ 4–5, Ex. A to Reply, ECF No. 15-2). Defendant then sent a registration link to a personal email provided by Plaintiff, where Plaintiff could access her Profile and had to create a unique password and PIN. (*Id.* ¶¶ 4–6).

To prove that Plaintiff operated the Profile and followed its online procedures, Defendant produces a "Document Electronic Signature Certificate." This Signature Certificate reveals Plaintiff's Profile entering confidential information on February 7, 2017, such as a social security number, residence, and banking information. (Document Electronic Signature Certificate, Ex. A-7 to Reply, ECF No. 15-9). That same date is also associated with Plaintiff's Profile accessing employment documents about Defendant's policies and practices, employee rights, and, most importantly, the "Associate Agreement" containing the arbitration provision at issue here. (Decl. Kimberly Bacci ¶ 11). According to a declaration provided by Kimberly Bacci (a "Global Director HR System" with Defendant), and as detailed in the Signature Certificate, Plaintiff had to click "yes" acknowledging her electronic review of Defendant's employment documents and her agreement with them. (*Id.*). The Profile would eventually have prompted Plaintiff to electronically sign all employment forms and documents by providing the designated PIN she created. (*Id.* ¶¶ 13–14). Only by entering this PIN would her name be affixed on employment documents with a related timestamp. (*Id.*). And in alignment with this process, Defendant points to Plaintiff's electronic name printed on an "Associate Agreement," which contains the relevant arbitration provision, alongside a time stamp of February 7, 2017. (eSigned Documents at 4, Ex. A-11 to Reply, ECF No. 15-13); (Document Electronic Signature Certificate, Ex. A-7); (Associate Agreement, Ex A-1 to Mot. Compel, ECF No. 11-3); (Pl.'s Electronic Signature Page to Associate Agreement, Ex. A-2 to Mot. Compel, ECF No. 11-4).

The evidence provided by Defendant resembles that which led other courts in this District to compel arbitration for a party denying online execution of an agreement. *See Moses*

*v. Lending Club*, No. 2:17-cv-03071-JAD-PAL, 2019 WL 489092, at *3 (D. Nev. Feb. 6, 2019). Moreover, when faced with Defendant's evidence, Plaintiff does not claim that her online account was fraudulently created by someone else. Nor does she argue against personally completing Defendant's online procedures to secure employment, or claim she did not receive a copy of Defendant's Associate Agreement related to her hire on January 30, 2017. She, instead, contends that her signature agreeing to arbitration must have been "forged on the contract" and "placed in the business records of Defendant." (Resp. 5:4–10). However, this contention alone is insufficient to refute Defendant's provided evidence. *Cf. Jaffey v. Del Taco Restaurants, Inc.*, No. 2:17-cv-2600-JCM-PAL, 2018 WL 3997261, at *2 (D. Nev. Aug. 21, 2018) (finding the plaintiff's contentions that he had no recollection of reviewing an arbitration agreement or providing an electronic signature was sufficiently refuted by the defendant's evidence proving "he alone had access to the contract" through an online profile for securing employment).

Defendant thus demonstrates that a valid, written arbitration agreement exists between it and Plaintiff. While the next step would be determining if the agreement encompasses Plaintiff's claims, Plaintiff does not present argument on this issue. Even if she did, the arbitration agreement expressly covers claims such as hers arising under the ADA. (Def.'s Associate Agreement, Ex. A-1 to Mot. Compel, ECF No. 11-3).

**B. Dismissal**

Because Plaintiff's claims are subject to arbitration, the Court may stay this case pending resolution of arbitration or dismiss it without prejudice. *See* 9 U.S.C. § 3; *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining that a court has the authority to dismiss an action that is properly suited for arbitration). Neither party addresses how dismissal without prejudice, rather than retaining oversight through a stay, is inappropriate or detrimental. Instead, dismissal seems justified here because there are no remaining issues

that would require the Court's attention after compelling arbitration. Accordingly, the Court dismisses Plaintiff's current claims without prejudice. *See, e.g.*, *Krogstadt v. Loan Payment Administration, LLC*, 2017 WL 6210314, at *1 (D. Nev. Apr. 13, 2017).

**C. Attorney's Fees**

Alongside its request to compel arbitration, Defendant seeks attorney's fees in bringing this Motion. Defendant supports its request by pointing to the strong evidentiary support for Plaintiff's execution of the binding agreement. (Mot. Compel 9:1–10). Also, Defendant provides a declaration from one of its attorneys in this matter, Dana B. Salmonson, explaining that Defendant attempted to avoid unnecessary motion practice and delay by proposing a stipulation to Plaintiff about arbitrating her claims. (Decl. Dana Salmonson ¶¶ 4–6, Ex. B. to Mot. Compel, ECF No. 11-5). But Plaintiff denied this stipulation. (*Id.*). Her counsel claimed that he successfully defeated a motion to compel arbitration in another matter, and he sought to produce the same result here. (*Id.*).

The Ninth Circuit has held that an award of attorney's fees "is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984). For example, one court in this circuit awarded attorney's fees where the party opposing arbitration cited "virtually no legal authority for its positions," argued against a "long line" of binding authority on the issue, and "dragged out" the dispute over an extended period of time by failing to timely respond to the complaint and repeated requests for arbitration. *Gen. Teamsters Local No. 174 v. Nw. Infrastructure, Inc.*, No. C06-1122P, 2007 WL 185012, at *4 (W.D. Wash. Jan. 19, 2007). Decisions in this District have awarded fees when presented with similar circumstances. In *Int'l Union of Painters Allied Trades Dist. Council Local No. 15 v. Diversified Flooring Specialist*, Inc., No. 2:06-cv-0358-RLH-PAL, 2007 WL 923936, at *6 (D. Nev. Mar. 23, 2007), the court awarded attorney's fees upon finding that the party opposing

arbitration ignored controlling caselaw and used dilatory tactics by repeatedly refusing arbitration requests—even when supported by uncontradicted evidence—resulting in years of delay before the Court ultimately granted the petition to compel arbitration. *Id*.

Here, the Court does not find that Plaintiff engaged in frivolous or bad-faith conduct warranting reimbursement of Defendant's attorney's fees. Though Defendant's evidence adequately establishes Plaintiff's execution of the arbitration agreement, Plaintiff's arguments did not ignore binding caselaw. She merely challenged the sufficiency of Defendant's evidentiary support. Moreover, Plaintiff's refusal to stipulate into arbitration does not appear entirely devoid of justification. Defendant supported its requested stipulation with only a type-written version of Plaintiff's name on the Associate Agreement. (*See* June 6, 2019 Correspondence from Def's Counsel to Pl's Counsel, Ex. B-1 to Mot. Compel, ECF No. 11-6). Plaintiff's refusal to stipulate after this single request, and her later strategy of challenging Defendant's evidentiary support, differ substantially from that discussed in the above-cited cases involving repeated rejections to arbitrate despite controlling caselaw and clear, uncontroverted evidence.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 11), is **GRANTED in part** and **DENIED in part**. The Court dismisses Plaintiff's claims because they are subject to a binding arbitration agreement. The Court, in exercising its discretion to dismiss the case, declines to award Defendant attorney's fees in bringing its Motion to Compel Arbitration.

The Clerk of Court shall close the case.

**DATED** this __7__ day of January, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court